Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 99 C 4327 | DATE | 11/26/2001 |
| CASE TITLE | MARIE MCCULLUM vs. SILVER CROSS HOSPITAL, et al | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: the plaintiff has not raised a genuine issue of material fact to be determined at a trial. Thus, the defendants' motion for summary judgment is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | NOV 2 8 2001 date docketed | |
| ✓ | Docketing to mail notices. | | | 68 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| TBK | courtroom deputy's initials | 01 NOV 27 PM 4:46 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MARIE McCULLUM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Hon. Ronald A. Guzman |
| v. ) | |
| ) | 99 C 4327 |
| SILVER CROSS HOSPITAL, ) | |
| JOHN LINDENMULDER, R.N., and ) | |
| PATRICIA P. QUILLMAN, R.N., ) | |
| ) | DOCKETED |
| Defendants. ) | NOV 2 8 2001 |

## MEMORANDUM OPINION AND ORDER

Plaintiff Marie McCullum brought a two-count complaint against defendants Silver Cross Hospital ("Silver Cross") and two members of its nursing staff alleging violations of 42 U.S.C. § 1981 and 42 U.S.C. § 1395dd ("EMTALA"). Before the Court is the defendants' motion for summary judgment as to these claims. For the reasons provided in this Memorandum Opinion and Order, the defendants' motion is granted.

## Facts[1]

The following facts are undisputed. Plaintiff Marie McCullum, an African-American, presented herself to the obstetrics unit at Silver Cross at the direction of her obstetrician, Dr. Michael Borders ("Borders"), on July 2, 1997. (Def.'s LR 56.1 (a)(3) ¶1.) She was diagnosed with a urinary tract infection, prescribed a medication, and sent home the same day. (*Id.* at ¶¶ 2-3.) Then, at or around 11:15 p.m. on July 3, Borders instructed plaintiff to go to the hospital after she complained to him about the pain she was experiencing. (*Id.* at ¶ 4.)

---

[1]Plaintiff's Local Rule 56.1(a)(3) ¶¶ 4-12 are stricken as they assert conclusory allegations.

1

Plaintiff and her husband Stephen McCullum arrived at Silver Cross sometime between 11:30 p.m. on July 3 and 12:30 a.m. on July 4. (*Id.* at ¶ 5.) An emergency room nurse took plaintiff's presenting complaint, history and on-set of her symptoms. (*Id.* at ¶ 7.) Either plaintiff or her husband indicated that she had been seen at the hospital the day prior, that she was diagnosed with a urinary tract infection, and the pain had become worse. (*Id.* at ¶ 8.) One of them also informed the nurse that plaintiff was 22 weeks pregnant and that Dr. Borders was her physician. (*Id.* at ¶¶ 9-10.) Plaintiff's vital signs were taken, including her temperature, blood pressure, and pulse. (*Id.* at ¶ 6.)

John Lindenmulder ("Lindenmulder") was the screening nurse who handled the initial contact with plaintiff and her husband. (*Id.* at ¶ 11.) He was also the nurse who took plaintiff's vital signs. (*Id.* at ¶ 12.) His assessment was that plaintiff's distress level was moderate. (*Id.* at ¶ 14.) Thus, he assessed plaintiff's condition as urgent as opposed to emergent. (*Id.* at ¶¶ 15-16.) Upon completion of the initial intake triage by Lindenmulder, plaintiff was placed in a wheel chair in the waiting area of the emergency room department. (*Id.* at ¶ 17.) Then, at approximately 3:00 a.m., plaintiff was taken to an exam room. (*Id.* at ¶ 18.)

While in the waiting area of the emergency room, plaintiff and her husband noticed an 8 or 9 months pregnant Caucasian or Hispanic female come into the hospital. (*Id.* at ¶ 21.) The screening nurse immediately admitted her to obstetrics. (*Id.* at ¶ 22.) Other than the Caucasian or Hispanic female who was 9 months pregnant being admitted to obstetrics, neither plaintiff nor her husband are aware of any other comments or conduct that might indicate that the delay in plaintiff's treatment was because of her race. (*Id.* at ¶ 23.)

At or around 4:10 a.m. on July 4, 1997, nurse Patricia Quillman noticed the umbilical cord outside of plaintiff's vagina as she was preparing to perform a pelvic ultrasound. (*Id.* at ¶ 24.)

Plaintiff was never connected to a fetal monitor at the emergency room, and she was never administered any form of medicine which would stabilize or bring her labor contractions to cessation. (Pl.'s LR 56.1(b)(3)(B) ¶¶ 2-3.) The twenty-two week fetus was delivered and subsequently died. (Def.'s LR 56.1 (a)(3) ¶ 25.)[2]

## Discussion

### I. Legal Standard

Under Rule 56(c), summary judgment is proper once the moving party has established that no genuine issue of material fact requiring resolution at trial can be found in the record and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In reviewing motions for summary judgment, courts must view the evidence in the light most favorable to the non-moving party, meaning that any doubt as to the existence of genuine issues of fact will be resolved against the moving party. *Valley Liquors, Inc. v. Renfield Importers, Ltd.*, 822 F.2d 656, 659 (7th Cir. 1987); *Sandler Associates, L.P. v. Bellsouth Corp.*, 818 F. Supp. 695, 702 (D. Del. 1993). However, a party may not rest upon pleadings to oppose a motion for summary judgment and must set forth specific facts showing that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### II. Section 1981

To establish a claim under § 1981, the plaintiff must show that: (1) she is a member of a racial minority; (2) the defendant had an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute. *Morris v. Office Max*, 89 F.3d 411 (7th Cir. 1996). The parties' disagreement with regard to this claim

---

[2] Under LR 56.1 (b)(3)(B), all material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party.

3

centers around whether or not the defendants discriminated against plaintiff on the basis of her race.

A plaintiff charging racial discrimination must make a showing of purposeful discrimination. It is not until then that the burden shifts to the defendant to rebut the charge. *Williams v Dekalb County*, 582 F.2d 2 (5th Cir. 1978). In making this prerequisite showing, the plaintiff's allegations should be supported by specific acts, practices or policies which resulted in the alleged discrimination. *Davey v Tomlinson*, 627 F. Supp 1458 (ED Mich. 1986).

Here, plaintiff contends that the defendants exhibited purposeful discrimination when they required her to wait three hours for treatment, while admitting a full-term Caucasian or Hispanic pregnant woman immediately upon her arrival. She relies solely on *Harry v. Marchant*, 259 F.3d 1310 (11th Cir. Fla. 2001) for the proposition that a minority woman's allegation that a hospital refused to contract for treatment on the basis of her race is sufficient to state a cause of action under section 1981. However, the Eleventh Circuit vacated the *Marchant* decision in July 2001 and plaintiff does not rely on any other case law. The Court finds this insufficient to shift the burden to Silver Cross.

However, assuming *arguendo* that this was sufficient to shift the burden to the defendants, the defendants have raised numerous arguments in their defense. Most significantly, they point out that the only way into the hospital after 8:00 p.m. was through the emergency room. Thus, there are many conceivable explanations as to why the non-black pregnant woman was not required to wait in the waiting room along with the plaintiff. For example, the fact that the other woman was full-term and the plaintiff was not is a very plausible explanation. Moreover, the fact that plaintiff presented with complaints of an existing urinary tract infection with increasing pain is also probative.

It is true that in deciding a motion for summary judgment, the Court must draw all reasonable inferences in favor of the nonmoving party. *Bratton v. Roadway Package System, Inc.*, 77 F.3d 168, 173 (7th Cir. 1996). However, "Courts of Appeals have reiterated that "conclusory" allegations unsupported by "specific" evidence will be insufficient to establish a genuine issue of fact." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 902 (1990). The burden here was on the plaintiff to raise an issue of fact as to whether she was discriminated against, and the Court cannot reasonably infer purposeful racial discrimination based solely on an allegation that a full-term non-Black pregnant woman was admitted to obstetrics before plaintiff. As the plaintiff has not raised a genuine issue of material fact for trial, the Court grants the defendants' motion for summary judgment with regard to this claim.

### III. EMTALA

Plaintiff next alleges that the Defendants violated EMTALA by failing to conduct an appropriate medical screening and by failing to stabilize her condition. EMTALA imposes two basic obligations on hospitals. First, when an individual seeks treatment at a hospital emergency room, "the hospital must provide for an appropriate medical screening examination to determine whether or not a medical condition exists. 42 U.S.C. § 1395dd(a). Second, if the screening examination reveals the presence of an emergency medical condition, the hospital ordinarily must stabilize the medical condition before transferring or discharging the patient." 42 U.S.C. § 1395dd(b); *Williams v. County of Cook*, No. 97 C 1069, 1997 U.S. Dist. LEXIS 10971, at *4 (N.D. Ill. July 22, 1997). Thus, to establish a violation, the plaintiff must show that: (1) Silver Cross is subject to the statute; (2) she arrived at the hospital seeking treatment; and (3) the hospital either did not properly screen her or it sent her away before stabilizing her problem. *Alvarez-Pumarejo v. Municipality of San Juan*, 972 F. Supp. 86 (D. P.R. 1997).

The plaintiff argues that the defendants did not provide her with an appropriate medical screening. A hospital provides "appropriate medical screening" under the statute when it follows its standard emergency room screening procedures. *Repp v. Anadarko Mun. Hosp.*, 43 F.3d 519 (10th Cir. 1994). According to the undisputed facts, the screening nurse registered the plaintiff's complaint and took her vital signs, including her temperature, blood pressure and pulse. He thereafter diagnosed her with a urinary tract infection. However, because he assessed the plaintiff's distress level to be moderate and her condition as urgent as opposed to emergent, he instructed her to wait in the waiting room. Thus, it appears as though the hospital performed a standard screening of plaintiff.

It is vitally important to note that EMTALA was not intended to be used as federal malpractice statute,[3] but was enacted to prevent patient dumping (which is the practice of refusing to treat patients who are unable to pay). *Marshall v. East Carroll Parish Hosp. Serv. Dist.* 134 F.3d 319 (5th Cir. 1998). In other words, it was enacted to prevent emergency rooms from refusing care to individuals because of their financial condition or lack of medical insurance. The statute only mandates that all patients be treated equally with respect to receiving a medical screening examination. *Anadumaka v. Edgewater Operating Co.*, 823 F. Supp. 507, 510 (N.D. Ill. 1993).

Plaintiff also contends that the defendants violated EMTALA in failing to stabilize her condition. Thus, a review of EMTALA's requirements is once again warranted. In short, EMTALA requires that all patients presenting to an emergency room be given a medical screening. If the personnel conducting the screening determines that the patient's condition is

---

[3] It appears as though the plaintiff is trying to make use EMTALA as a federal malpractice claim as the facts she uses to support her claim that she was not appropriately screened are that she was not connected to a fetal monitor or offered medication to stop her labor contractions.

emergent, they are thereafter required to stabilize the patient's condition before *discharging* or *transferring* the patient. Again, this is because EMTALA was enacted to prevent "patient dumping." Here, upon review of the uncontested facts, there was clearly no violation. Plaintiff was not diagnosed with an emergent condition and she was neither transferred nor discharged prior to the baby's premature birth and resulting death.

Plaintiff's final argument in support of her contention that the defendants are liable under EMTALA is that they violated a Silver Cross policy requiring all patients that are twenty or more weeks pregnant to be sent to obstetrics. The Court will take the liberty to again reemphasize the purpose of the statute. EMTALA was not enacted to provide a remedy for negligence, it was enacted to ensure that those who could not afford to pay would not be sent away without treatment. It requires that all patients, both rich and poor, must be treated equally, at least with regard to an initial screening and stabilization (if necessary). As the screening nurse was ignorant of the policy (Lindenmulder Dep. at p. 8), plaintiff's ability or inability to pay was not a factor motivating his actions and there is no evidence that he did not follow the same procedure with respect to all pregnant women he screened. Thus, all of the pregnant women he screened were treated equally.

Again, instances of negligence in the screening or diagnostic processes, or of mere faulty screening, are not actionable under 42 USCS § 13955dd. *See Summers v. Baptist Medical Ctr. Arkadelphia*, 91 F.3d 1132 (8th Cir. 1996). This is clearly illustrated in *Anadumaka*. The plaintiff in *Anadumaka* alleged that the triage nurse's determination that her son did not have an emergency medical condition violated EMTALA, arguing that this misdiagnosis led to an inappropriate delay in the boy's treatment. *Id.* at 509. The district court rejected plaintiff's claim, stating that her argument was one of misdiagnosis and, thus, not addressed by EMTALA.

7

*Id.* at 510.

The case at bar is factually analogous to *Anadumaka*. Here, the emergency room nurse screened the plaintiff and assessed her condition as urgent, not as emergent. Although his diagnosis may have been wrong, whether there has been an "appropriate medical screening examination" is not judged by the practitioner's proficiency in accurately diagnosing a patient's illness. *Marshall v East Carroll Parish Hosp. Serv. Dist.* 134 F.3d 319 (5th Cir. 1998). Because the facts indicate that the hospital screened the plaintiff in accordance with EMTALA, there is no genuine issue of material fact for trial. Thus, a grant of summary judgment with regard to this claim is warranted.

## Conclusion

For the abovementioned reasons, the plaintiff has not raised a genuine issue of material fact to be determined at a trial. Thus, the defendants' motion for summary judgment is granted.

SO ORDERED:  ENTER. 11/26/01

*/s/ Ronald A. Guzman*
HON. RONALD A. GUZMAN
United States Judge

8